IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

GREENVILLE DIVISION

| | |
|---|---|
| Leonard F. Tegley, ) | |
| ) | Civil Action No. 6:06-2190-HFF-WMC |
| Plaintiff, ) | |
| ) | **REPORT OF MAGISTRATE JUDGE** |
| vs. ) | |
| ) | |
| Michael J. Astrue, ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the court for a report and recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., concerning the disposition of Social Security cases in this District, and Title 28, United States Code, Section 636(b)(1)(B).[1]

The plaintiff brought this action pursuant to Section 205(g) of the Social Security Act, as amended (42 U.S.C. 405(g)), to obtain judicial review of a final decision of the Commissioner of Social Security denying his claim for disability insurance benefits under Title II of the Social Security Act.

**ADMINISTRATIVE PROCEEDINGS**

The plaintiff filed an application for disability insurance benefits on December 7, 2001, which was denied initially and on reconsideration. A hearing was requested and held on May 28 and July 30, 2003, and on August 25, 2003, the administrative law judge ("ALJ") found that the plaintiff was disabled from December 12, 2000, to March 30, 2002. The plaintiff appealed this decision to the Appeals Council. On

---

[1] A report and recommendation is being filed in this case, in which one or both parties declined to consent to disposition by the magistrate judge.

February 22, 2005, the Appeals Council affirmed the ALJ's finding that the plaintiff was disabled from December 12, 2000, to March 30, 2002, but vacated the remainder of the claim and remanded the case to the ALJ for further consideration.

A supplemental hearing was held on April 27, 2005, at which the plaintiff, his attorney and a vocational expert appeared. On February 24, 2006, the ALJ again found that the plaintiff's disability ceased in March 2002. The administrative law judge's finding became the final decision of the Commissioner of Social Security when it was approved by the Appeals Council on June 28, 2006. The plaintiff then filed this action for judicial review.[2]

In making his determination that the plaintiff is not entitled to benefits, the Commissioner has adopted the following findings of the administrative law judge:

> (1)   The claimant meets the nondisability requirements for a period of disability and Disability Insurance Benefits set forth in Section 216(I) of the Social Security Act and is insured for benefits through December 31, 2005.
>
> (2)   The claimant has not engaged in substantial gainful activity since his prior disability onset date of December 1, 2002.
>
> (3)   The claimant's medical condition for which he was previous [sic] found disabled has medically improved and this improvement is related to his ability to perform work.
>
> (4)   The claimant's degenerative disc disease status post laminectomy and spinal cord stimulator is considered to be "severe" based on the requirements in the Regulations 20 CFR § 404.1520(c).
>
> (5)   This medically determinable impairment does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4.

---

[2] While this claim was pending before the Appeals Council, the plaintiff filed a subsequent claim for disability insurance benefits on November 7, 2003, alleging disability as of December 14, 2000. This claim was also denied initially and on reconsideration, and has been consolidated with the earlier application of December 7, 2001.

(6)     The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reasons set forth in the body of the decision.

(7)     The claimant retains a residual functional capacity to perform a significant range of light work activity as described above.

(8)     The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

(9)     The claimant is a "younger individual between the ages of 18 and 44" (20 CFR § 404.1563).

(10)    The claimant has "more than a high school (or high school equivalent) education" (20 CFR § 404.1564).

(11)    The claimant has no transferable skills from any past relevant work and/or transferability of skills is not an issue in this case (20 CFR. 404.1568).

(12)    The claimant has the residual functional capacity to perform a significant-range of light work (20 CFR § 404.1567).

(13)    Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.21 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform. Examples of such jobs include work as a parking lot attendant, a storage clerk, and a carton packer.

(14)    The claimant's disability ceased on March 311, [sic] 2002 (20 CFR §404.1594).

The only issues before the court are whether proper legal standards were applied and whether the final decision of the Commissioner is supported by substantial evidence.

## APPLICABLE LAW

The Social Security Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and

who are under a "disability."  42 U.S.C. §423(a).  "Disability" is defined in 42 U.S.C. §423(d)(1)(A) as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for at least 12 consecutive months.

To facilitate a uniform and efficient processing of disability claims, the Social Security Act has by regulation reduced the statutory definition of "disability" to a series of five sequential questions.  An examiner must consider whether the claimant (1) is engaged in substantial gainful activity, (2) has a severe impairment, (3) has an impairment which equals an illness contained in the Social Security Administration's Official Listings of Impairments found at 20 C.F.R. Part 4, Subpart P, App. 1, (4) has an impairment which prevents past relevant work, and (5) has an impairment which prevents him from doing substantial gainful employment.  20 C.F.R. §404.1520.  If an individual is found not disabled at any step, further inquiry is unnecessary.  20 C.F.R. §404.1503(a).  *Hall v. Harris*, 658 F.2d 260 (4th Cir. 1981).

A plaintiff is not disabled within the meaning of the Act if he can return to past relevant work as it is customarily performed in the economy or as the claimant actually performed the work.  SSR 82–62.  The plaintiff bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. §423(d)(5).  He must make a prima facie showing of disability by showing he is unable to return to his past relevant work.  *Grant v. Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983).

Once an individual has established an inability to return to his past relevant work, the burden is on the Commissioner to come forward with evidence that the plaintiff can perform alternative work and that such work exists in the regional economy.  The Commissioner may carry the burden of demonstrating the existence of jobs available in the

national economy which the plaintiff can perform despite the existence of impairments which prevent the return to past relevant work by obtaining testimony from a vocational expert. *Id.*

The scope of judicial review by the federal courts in disability cases is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the correct law was applied. *Richardson v. Perales*, 402 U.S. 389 (1971); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). Consequently, the Act precludes a *de novo* review of the evidence and requires the court to uphold the Commissioner's decision as long as it is supported by substantial evidence. *See Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (*citing Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)). The phrase "supported by substantial evidence" is defined as :

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence."

Thus, it is the duty of this court to give careful scrutiny to the whole record to assure that there is a sound foundation for the Commissioner's findings, and that her conclusion is rational. *Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

## EVIDENCE PRESENTED

The record reveals the plaintiff was 36 years old at the time of his alleged onset of disability, December 12, 2000 (Tr. 97), and 41 years old at the time of the ALJ's decision, February 24, 2006 (Tr. 37). He claimed that he became disabled on July 10, 1995, due to a back injury, chronic pain, headaches and depression (Tr. 101). The plaintiff

5

has a high school education with vocational training in drafting design (Tr. 107) and work experience as a construction superintendent, torpedo man and security guard (Tr. 102).

Dr. Donald R. Johnson, III, reported that the plaintiff underwent back surgery in 1995 and that he did quite well after the surgery until April 2000, when he complained of increasing back pain (Tr. 222).

On April 20, 2000, Dr. Brian G. Cuddy saw the plaintiff for a neurosurgical consultation. Dr. Cuddy recommended lumbar fusion surgery (Tr. 289-90).

On December 14, 2000, Dr. Johnson saw the plaintiff after he re-injured his back while bending over to pick up a pin. The next day, Dr. Johnson noted that an MRI scan revealed no evidence of a recurrent disc herniation (Tr. 218, 168-70).

On December 28, 2000, Dr. W.S. Edwards, Jr., saw the plaintiff on referral from Dr. Johnson. A physical examination was essentially normal except for positive straight leg raising signs on the left. Dr. Edwards advised against fusion surgery because it might hasten the degenerative process above the L5-S1 level (Tr. 142-43).

On January 4, 2001, Dr. Johnson concurred with Dr. Edwards' assessment (Tr. 216).

On July 19, 2001, Dr. Johnson stated that the plaintiff should not return to his previous job or any type of manual labor but could perform sedentary work (Tr. 210).

On August 24, 2001, Dr. Don O. Stovall, Jr., saw the plaintiff for an independent medical evaluation. Dr. Stovall stated that the plaintiff was not a surgical candidate, was at maximum medical improvement, and would be "restricted to a light duty type of classification" (Tr. 157-59).

On August 27, 2001, George L. Cogar, Ph.D., saw the plaintiff on referral from Dr. Johnson. Dr. Cogar diagnosed major depressive episode, mild to moderately severe; and pain disorder associated with both psychological factors and a general medical condition (Tr. 238-41).

On October 29, 2001, Dr. Johnson noted that a functional capacity evaluation placed the plaintiff in the medium work category. However, Dr. Johnson placed the plaintiff in the light work category due to his symptoms after the evaluation (Tr. 208, 445-69).

On January 7, 2002, Dr. Johnson stated that an updated MRI scan revealed no structural change, but "almost complete collapse at L5-S1 with bone-on-bone." Dr. Johnson also revised his assessment of the plaintiff's work capacity to "very sedentary level with no repetitive bending, no lifting over about ten (10) pounds" due to the plaintiff's increased symptoms after the evaluation (Tr. 206, 165-67).

On January 22, 2002, Judith M. Von, Ph.D., a State agency psychologist, found that the plaintiff did not have a severe mental impairment (Tr. 171-84).

On January 24, 2002, Dr. F. K. Baker, a State agency physician, found that the plaintiff could perform light work (Tr. 185-92).

On March 5, 2002, Dr. Cogar found that the plaintiff's affect was slightly anxious, but his mood was improving and stable (Tr. 231).

On March 14, 2002, Dr. Mark D. Netherton saw the plaintiff for pain management on referral from Dr. Johnson. A physical examination was essentially normal except for a positive straight leg raising on the left, pressure in the low back to palpation with no specific tender or trigger point, and some increased pain with flexion extension at the waist (Tr. 204-05).

On April 9, 2002, Dr. Cogar found the plaintiff's affect was a bit more anxious than the last visit due to financial issues, but his mood was stable (Tr. 230).

On May 2, 2002, a State agency physician (signature illegible), found that the plaintiff could perform sedentary work (Tr. 193-200).

On May 13, 2002, Dr. Netherton noted the plaintiff was able to ambulate into the clinic and that he had pain on flexion at the waist (Tr. 202).

7

On June 5, 2002, a State agency psychologist (signature illegible), affirmed Dr. Von's finding that the plaintiff did not have a severe mental impairment (Tr. 171).

On July 15, 2002, Dr. Netherton noted the plaintiff continued to have pain on flexion extension at the waist and with straight leg raising. The plaintiff had normal strength in his lower extremities at the L4-5 distribution and normal sensation in his lower extremities, but he walked with an antalgic gait favoring his right leg (Tr. 201).

On February 18, 2003, Dr. Cuddy found a normal physical examination and advised against surgery (Tr. 288).

On April 15, 2003, Dr. Johnson completed an assessment in which he indicated that the plaintiff had significant limitations. For example, Dr. Johnson stated the plaintiff's pain would frequently interfere with his attention and concentration. He found that the plaintiff could rarely lift and carry 10 pounds, could rarely twist, stoop, and crouch. He also concluded that the plaintiff would miss work more than seven days per month due to his impairments or treatment (Tr. 291-96).

On May 27, 2003, Dr. Andrew Geer, a treating pain specialist, completed an assessment wherein he indicated that the plaintiff had significant limitations due to his pain. Dr. Geer stated that the plaintiff's use of narcotics prevented him from working, his variable pain levels made him unable to perform any job, and he would be incapable of holding a job because of his inability to predict good and bad days (Tr. 737-40).

On May 27, 2003, William G. Kee, Ph.D., a treating psychologist, completed an assessment wherein he indicated that the plaintiff had significant limitations. For example, Dr. Kee found that the plaintiff was unable to meet competitive standards in performing at a consistent pace without an unreasonable number and length of rest periods and in dealing with normal work stress. Dr. Kee also found that the plaintiff's impairments or treatment would cause him to miss work more than four days per month (Tr. 714-18).

On January 20, 2004, Dr. J. Edward Nolan saw the plaintiff on referral from Dr. Geer. A physical examination was normal except for severe pain in the left lumbar paraspinous musculature with extension and rotation of the spine, and severe left lumbar radiculitis in the S1 nerve distribution to the knees (Tr. 420).

On April 27, 2004, Dr. George F. Keller, a State agency physician, found that the plaintiff could perform sedentary work (Tr. 506-13).

On May 4, 2004, Dr. Von found that the plaintiff did not have a severe mental impairment (Tr. 514-27).

On August 3, 2004, M. Patrick Jarrell, Ph.D., a State agency psychologist, found that the plaintiff did not have a severe mental impairment (Tr. 562-75). Also on August 3, 2004, Dr. Baker, a State agency physician, found that the plaintiff could perform light work (Tr. 576-83).

In an undated assessment,[3] Dr. Noel M. Hunt noted that he had treated the plaintiff since September 2004 for depression, chronic pain, anxiety. Dr. Hunt stated the plaintiff had difficulty dealing with stress and experienced grogginess and tremulousness due to his medications. Dr. Hunt found that the plaintiff's depression met the Listing 12.04 (Tr. 584-85).

On January 14, 2005, Dr. Dom Coric noted that the plaintiff was "essentially disabled from even normal activities and is requiring increasing amounts of narcotic pain medicine and feels like his symptoms are absolutely intolerable" (Tr. 599).

On February 23, 2005, the plaintiff agreed to undergo lumbar fusion surgery because his symptoms were intolerable (Tr. 598).

---

[3]The statement is undated, but Dr. Hunt's previous treatment notes were dated March 2005 (Tr. 586-87), and his treatment notes were faxed to the plaintiff's attorney in April 2005 (Tr. 584-99). Therefore, it seems reasonable to conclude that this assessment was completed in or about April 2005.

9

On March 3, 2005, the plaintiff cancelled his surgery scheduled for April 12, 2005, because he had found another physician who would perform the surgery as a charity case (Tr. 596).

On April 20, 2005, Dr. Geer completed an assessment of the plaintiff's physical functioning, which was inconsistent with performing work. For example, Dr. Geer found that the plaintiff could sit for one hour total in an eight-hour workday, walk for one hour total in an eight-hour workday, and would miss work four or more times a month (Tr. 730-34).

## **ANALYSIS**

As discussed above, the ALJ issued a decision on August 25, 2003, finding that the plaintiff was disabled for a closed period of disability beginning December 12, 2000, and ending March 30, 2002. Upon remand from the Appeals Council on the issue of disability after March 30, 2002, a supplemental hearing was held on April 27, 2005, at which the plaintiff, his attorney, and a vocational expert appeared. The plaintiff claimed that he remained disabled due to degenerative disc disease, back pain, major depressive disorder, anxiety, and a pain disorder. On February 24, 2006, the ALJ again found that the plaintiff's disability ceased on March 31, 2002, as at that time he retained the ability to perform a significant range of light work. The plaintiff alleges that the ALJ erred by: (1) failing to apply the medical improvement standard in determining that his disability ended in March 2002; (2) failing to perform a proper credibility analysis; and (3) failing to reconcile the finding of "not disabled" with the fact that four treating physicians have opined that the plaintiff's impairments make it impossible for him to work.

***Medical Improvement Standard***

The Appeals Council remanded the plaintiff's case to the ALJ "for further consideration to the issue of disability in accordance with the medical improvement standards and the sequential evaluation process" (Tr. 86). The plaintiff first argues that the ALJ failed to apply the medical improvement standard in his decision. As Title 42, United States Code, Section 423(f) states, termination of disability benefits must be based on substantial evidence of medical improvement. The regulations provide that "[a] determination that there has been a decrease in medical severity must be based on changes (improvements) in the symptoms, signs and/or laboratory findings associated with your impairment." 20 C.F.R. § 404.1594(b)(1). The plaintiff argues that the ALJ failed to "expressly compare the evidence he used to determine that Mr. Tegley was disabled in the prior decision with any signs, symptoms, and laboratory findings indicating that medical improvement, had, in fact occurred" (pl. brief 13). This court agrees.

As argued by the plaintiff, a comparison of the evidence used in the prior favorable decision granting the plaintiff benefits with the evidence relevant to the period following March 30, 2002, reveals that the plaintiff's condition did not improve. For instance, in a medical note dated less than 12 weeks before the date upon which the ALJ decided that the plaintiff's disability ended, Dr. Johnson indicated that the plaintiff continued to have almost complete collapse at L5-S1 with bone-on-bone. He had edema into the L5 and S1 vertebral bodies, an indication of the instability and inflammation into the bone. Dr. Johnson indicated that the plaintiff was developing arthritis in this region and that the disc at L4-5 continued to protrude causing the plaintiff to experience pain on a daily basis (Tr. 206).

In July 2002, less than four months after the date upon which the ALJ found that the plaintiff's disability ended, Dr. Netherton noted that the plaintiff had post laminectomy syndrome and lumbar neuropathic pain with nerve root injury. He reported

11

that the plaintiff continued to have pain on flexion and extension at the waist and had radicular component pain with straight leg lifts at greater than 45 degrees (Tr. 201). In support of his decision finding medical improvement, the ALJ noted that upon examination by Dr. Netherton in May 2002, the plaintiff had no specific antalgic gait and indicated that medications were helping to control his pain (Tr. 29, 202). However, upon examination of the plaintiff in July 2002, Dr. Netherton noted that the plaintiff had an antalgic gait favoring the right leg and further noted that while medications helped, they did not provide complete pain relief (Tr. 201).

On April 15, 2003, Dr. Johnson completed an assessment in which he indicated that the plaintiff had significant limitations. For example, Dr. Johnson stated the plaintiff's pain would frequently interfere with his attention and concentration and that his medication would have sedative effects. He found that the plaintiff could rarely lift and carry 10 pounds, could rarely twist, stoop, and crouch. He also concluded that the plaintiff would miss work more than seven days per month due to his impairments or treatment (Tr. 291-96).

On May 27, 2003, Dr. Geer, a treating pain specialist, completed an assessment wherein he indicated that the plaintiff had significant limitations due to his pain. Dr. Geer stated that the plaintiff's use of narcotics prevented him from working; his variable pain levels made him unable to perform any job; and he would be incapable of holding a job because of his inability to predict good and bad days (Tr. 737-40). Again in April 2005, Dr. Geer completed an assessment of the plaintiff's physical functioning, which was inconsistent with performing work. For example, Dr. Geer found that the plaintiff could sit for one hour total in an eight-hour workday, walk for one hour total in an eight-hour workday, and would miss work four or more times a month. He indicated that the plaintiff's physical impairments cause pain which make it very difficult for him to cope mentally. He also noted

that the side effects of the plaintiff's medication included drowsiness, irritability, nausea and impaired concentration (Tr. 730-34).

On May 27, 2003, Dr. Kee, a treating psychologist, completed an assessment wherein he indicated that the plaintiff had significant limitations. For example, Dr. Kee found that the plaintiff was unable to meet competitive standards in performing at a consistent pace without an unreasonable number and length of rest periods and in dealing with normal work stress. Dr. Kee also found that the plaintiff's impairments or treatment would cause him to miss work more than four days per month (Tr. 714-18).

Based upon the foregoing, this court finds that the ALJ's determination that the plaintiff had medically improved as of March 30, 2002, was not based upon substantial evidence.

*Credibility*

The plaintiff next argues that the ALJ failed to properly assess his credibility. The Fourth Circuit Court of Appeals has stated as follows with regard to the analysis of a claimant's subjective complaints:

> [T]he determination of whether a person is disabled by pain or other symptoms is a two-step process. First, there must be objective medical evidence showing the existence of a medical impairment(s) which results from anatomical, physiological, or psychological abnormalities and which could reasonably be expected to produce the pain or other symptoms alleged. . . . It is only after a claimant has met her threshold obligation of showing by objective medical evidence a medical impairment reasonably likely to cause the pain claimed, that the intensity and persistence of the claimant's pain, and the extent to which it affects her ability to work, must be evaluated.

*Craig v. Chater*, 76 F.3d 585, 593, 595 (4th Cir. 1996). A claimant's symptoms, including pain, are considered to diminish his capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical evidence and other evidence.

20 C.F.R. §§404.1529(c)(4) and 416.929(c)(4). Furthermore, "a formalistic factor-by-factor recitation of the evidence" is unnecessary as long as the ALJ "sets forth the specific evidence [he] relies on in evaluating the claimant's credibility." *White v. Massanari*, 271 F.3d 1256, 1261 (10th Cir. 2001). Social Security Ruling 96-7p states that the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record." Furthermore, it "must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and reasons for that weight." SSR 96-7p, 1996 WL 374186, *4.

In addition to the objective medical evidence, the factors to be considered by an ALJ when assessing the credibility of an individual's statements include the following:

  (1) the individual's daily activities;

  (2) the location, duration, frequency, and intensity of the individual's pain or other symptoms;

  (3) factors that precipitate and aggravate the symptoms;

  (4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms;

  (5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms;

  (6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and

  (7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms.

SSR 96-7p, 1996 WL 374186, *3.

The plaintiff argues that the ALJ failed to perform a proper credibility analysis by "completely bypass[ing] the first step of a two-step process and mov[ing] directly into an

attack on [the plaintiff's] credibility" (pl. brief 14).  The defendant contends that because the ALJ found the plaintiff's musculoskeletal impairment to be severe, he impliedly found that the plaintiff had an impairment that could reasonably be expected to produce the pain or other symptoms alleged at the first step of the pain analysis (def. brief 13).  This court finds that the ALJ's credibility analysis was in error.

***Treating Physicians***

Lastly, the plaintiff argues that the ALJ failed to reconcile his findings of "not disabled" with the fact that four treating physicians have opined that the plaintiff's impairments make it physically impossible for him to work. The opinion of a treating physician is entitled to controlling weight if it is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in the case.  *See* 20 C.F.R. §416.927(d)(2) (2006); *Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001).  However, statements that a patient is "disabled" or "unable to work" or meets the Listing requirements or similar statements are not medical opinions. These are administrative findings reserved for the Commissioner's determination. SSR 96-2p. Furthermore, even if the plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision. *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

The regulations provide that even if an ALJ determines that a treating physician's opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying five factors:  (1) the length of the treatment relationship and the frequency of the examinations; (2) the nature and extent of the treatment relationship; (3) the evidence with which the physician supports his opinion; (4) the consistency of the opinion; and (5) whether the physician is a specialist in the area in

which he is rendering an opinion. 20 C.F.R. §404.1527(d)(2)-(5). Social Security Ruling 96-2p requires that an ALJ give specific reasons for the weight given to a treating physician's medical opinion. SSR 96-2p, 1996 WL 374188, *5. As stated in Social Security Ruling 96-2p:

> A finding that a treating source medical opinion is not well supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. 404.1527 and 416.927. In many cases, a treating source's opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

*Id.* 1996 WL 374188, *4.

As set forth above, on May 27, 2003, Dr. Kee, a treating psychologist, completed an assessment wherein he indicated that the plaintiff had significant limitations. For example, Dr. Kee found that the plaintiff was unable to meet competitive standards in performing at a consistent pace without an unreasonable number and length of rest periods and in dealing with normal work stress. Dr. Kee also found that the plaintiff's impairments or treatment would cause him to miss work more than four days per month (Tr. 714-18). Further, on May 27, 2003, Dr. Geer, a treating pain specialist, completed an assessment indicating that the plaintiff had significant limitations due to his pain. Dr. Geer stated that the plaintiff's use of narcotics prevented him from working, his variable pain levels made him unable to perform any job, and he would be incapable of holding a job because of his inability to predict good and bad days (Tr. 737-40). Again in April 2005, Dr. Geer completed an assessment of the plaintiff's physical functioning, which was inconsistent with performing work. For example, Dr. Geer found that the plaintiff could sit for one hour total in an eight-hour workday, walk for one hour total in an eight-hour workday, and would miss work four

or more times a month. He indicated that the plaintiff's physical impairments cause pain which makes it very difficult for him to cope mentally. He also noted that the side effects of the plaintiff's medication included drowsiness, irritability, nausea and impaired concentration (Tr. 730-34).

The ALJ rejected these opinions as inconsistent with weight of the evidence (Tr. 16-17). This court finds that the ALJ failed to properly evaluate the opinions of the plaintiff's treating physicians. As set forth above, even if the ALJ makes the determination that a medical opinion is not entitled to controlling weight, he still must consider the weight given to the physician's opinion by applying the factors described above, which the ALJ in this case did not do.

The plaintiff also submitted the opinions of two other treating physicians to the Appeals Council for consideration. In a letter dated March 22, 2006, Dr. John A. Glaser opined that the plaintiff is disabled from his severe spinal pathology. He noted that the plaintiff had undergone multiple operations which had been unsuccessful in alleviating his pain and that he required a cane, walker, and a bedside commode on a permanent basis (Tr. 752). In a letter faxed on April 03, 2006, Dr. Noel M. Hunt stated the plaintiff's major depression had significantly limited his ability to sustain activity. He noted that research clearly demonstrates that major depression has the capacity to worsen the symptoms of other illnesses. He opined that the decision in the plaintiff's case did not demonstrate that the decisionmaker had a clear understanding of the plaintiff's medical circumstances, illustrated by the ALJ's failure to understand the difference between water-based exercise and swimming, along with his obvious attempt to obfuscate the issues by indicating that the plaintiff's attempts to get well are, in fact, evidence that he is well. Lastly, Dr. Hunt opined that pain is the plaintiff's primary disability, but that this is complicated by his mood disorder. He stated that it was his belief that if the plaintiff's pain did not improve, then his mental condition would not improve, and that he would never be able to work (Tr. 756). Further,

in a report dated April 10, 2006, that was also submitted to the Appeals Council, treating psychologist Dr. Kee stated that the plaintiff's "significant psychiatric problems have limited his ability to sustain activity of any kind." He further stated that he had treated the plaintiff since April 10, 2003, and there had been no gap in treatment since that time (Tr. 757-60).

The Appeals Council denied the plaintiff's request for review of the ALJ's decision stating that it "found no reason . . . to review the ALJ's decision" (Tr. 9-12). The defendant argues that the Appeals Council properly found that Dr. Glaser's opinion was not material as it was dated the month after the ALJ's decision and Dr. Hunt's opinion was not material "as it was basically a collateral attack of the ALJ's decision" (def. brief 16). The plaintiff argues, and this court agrees, that the defendant's post-hoc rationalizations for the Appeals Council's rejection of these physician's opinions are inappropriate. *See Golembiewski v. Barnhart*, 322 F.3d 912, 916 (7th Cir. 2003) ("[G]eneral principles of administrative law preclude the Commissioner's lawyers from advancing grounds in support of the agency's decision that were not given by the ALJ."). In *Harmon v. Apfel*, 103 F.Supp.2d 869 (D.S.C. 2000), the Honorable David C. Norton, United States District Judge, stated:

> [A]lthough the Appeals Council's decision whether to grant or deny review of an ALJ's decision may be discretionary as well as unreviewable, and the regulations do not require the Appeals Council to articulate a reason for its decision not to grant review, a reviewing court cannot discharge its statutory function of determining whether the findings of the Commissioner are supported by substantial evidence when the Appeals Council considered evidence that the ALJ did not have the opportunity to weigh, and rejected that new, additional evidence without specifying a reason for rejecting it or explicitly indicating the weight given to the evidence.

*Id.* at 874.

18

**CONCLUSION AND RECOMMENDATION**

The record does not contain substantial evidence supporting the Commissioner's decision finding the plaintiff's disability ceased on March 31, 2002. The plaintiff's claim has gone on now for nearly six years, and he has appeared before the same ALJ on three separate occasions. Reopening the record for more evidence would serve no purpose. *See Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974). Therefore, based upon the foregoing, it is recommended that the Commissioner's decision denying the plaintiff's application be reversed pursuant to sentence four of 42 U.S.C. §405(g) and that the plaintiff be awarded benefits.

                                               s/William M. Catoe
                                               United States Magistrate Judge

November 5, 2007

Greenville, South Carolina